## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LISA MARTIN,

     5615 Signet Lane
     Riverdale Park, MD 20737,

        Plaintiff,

         v.

CARLOS GUTIERREZ, in his official capacity
   as Secretary of the U.S. Department of
   Commerce,

     U.S. Department of Commerce
     14th St. and Constitution Ave., N.W.
     Washington, DC 20230,

FRED FANNING,

     3 Chandler Court
     Fredericksburg, VA 22405,

DOUGLAS ELZNIC,

     8060 Winstead Manor Lane
     Lorton, VA 22079,

BRAULIO RAMON,

     9324 Woodsedge Court
     Laurel, MD 20723,

        Defendants.

Case No. _____

**Complaint for Damages and
Demand for Jury Trial**

---

## NATURE OF ACTION

    1.     Plaintiff, Lisa Martin, sues her employer and three of her managers to restore

her good name and cleanse her previously spotless work record. She lodges claims against



*Martin v. Gutierrez, et al.*

them for disability discrimination under the Rehabilitation Act (Count 1), gender discrimination under Title VII (Count 2), race and color discrimination under Title VII and 42 U.S.C. § 1981 (Counts 3 & 4), wrongful disclosure of agency records under the Privacy Act (Count 5), wrongful disclosure of medical information under the Rehabilitation Act (Count 6), public disclosure of private facts under common law (Count 7), retaliation under Title VII and 42 U.S.C. § 1981 (Counts 8 & 9), and conspiracy to interfere with her civil rights under 42 U.S.C. § 1985(3) (Count 10). She demands a jury trial, seeking monetary and injunctive relief.

2.      Plaintiff has worked at the Department of Commerce ("Commerce") for twenty years, serving as headquarters Parking Coordinator for three years. In 2001, she sought treatment for hip pain. By 2006, her hip condition had grown into a serious disability. After physical examinations by her doctor and Commerce's Medical Officer, she applied for, and received, a disability-based parking permit. It reduced her walk from the car to the office by almost a mile each day. In processing the permit, she, as Parking Coordinator, followed the same procedures she had always followed for other disabled employees.

3.      Days after receiving the permit, one of Plaintiff's managers openly questioned its legitimacy and her entitlement to it. He initiated an investigation of sorts, in which her movements were watched, her office was searched after hours, and her coworkers were

---

**Complaint for Damages and Demand for Jury Trial**



questioned about her private, medical condition. When she offered documentation supporting the permit, her managers disregarded it. Ultimately, the investigation led to her suspension for three days without pay for "unprofessional conduct in improperly using [her] position to obtain a parking permit." (But Defendants never revoked her parking permit and allowed her to remain Parking Coordinator until she complained of discrimination.)

4.      Because the Medical Officer authorized Plaintiff's permit based solely on her *condition*, not her *position*, and because no special set of employee policies applied solely to Commerce Parking Coordinators, Plaintiff opposed her suspension as a violation of her rights as a disabled, black woman. She pointed out that neither the white-male manager who had directed her to visit the Medical Officer nor the white-male Medical Officer who authorized the permit were punished for using their *positions* to facilitate her "unprofessional conduct." She observed that two of the managers involved in her suspension were able-bodied, white men who were never punished for repeatedly issuing themselves and family members parking permits—permits that, unlike Plaintiff's, did not require neutral evaluation by two, independent doctors. Finally, she witnessed one of the managers involved in her suspension issue a disability-based parking permit to her coworker <u>*before*</u> the Medical Officer had authorized it,

---

**Complaint for Damages and Demand for Jury Trial**



*Martin v. Gutierrez, et al.*

which Commerce's policy clearly prohibits. Nonetheless, both white men went unpunished for abusing their *positions* and violating the policy.

5.      Since no Commerce policy (written or unwritten) prohibited the Parking Coordinator from receiving a disability-based parking permit and since no legitimate reason could justify suspending her for "violating" a nonexistent policy, Plaintiff filed an administrative grievance formally repeating her allegations of discriminatory treatment. Doing so, however, only led to more discrimination. A few days after she filed the grievance, her managers began preparations to banish her to an inferior job assignment. They found an able-bodied, white male to replace her. Then, they notified her of the transfer just a week before it occurred.

## PARTIES

6.      Plaintiff is a disabled, black female who works at Commerce headquarters.

7.      Defendant, Carlos Gutierrez, serves as Secretary of Commerce and is party to this lawsuit in his official capacity. Commerce is headquartered in the District of Columbia.

8.      Defendant, Fred Fanning, is a white, male Commerce employee, who works at headquarters and manages Plaintiff.

9.      Defendant, Doug Elznic, is a white, male Commerce employee, who works at headquarters and managed Plaintiff until March 2007. He reports to Defendant Fanning.

Complaint for Damages and Demand for Jury Trial



*Martin v. Gutierrez, et al.*

10.     Defendant, Braulio Ramon, is a white, male Commerce employee, who works at headquarters and managed Plaintiff until Defendants involuntarily transferred her to another division of Commerce. He reported to Defendants Elznic and Fanning at the time Plaintiff was suspended. He continues to report to Defendant Fanning.

**JURISDICTION AND VENUE**

11.     This Court has jurisdiction and venue because (a) Plaintiff has lodged claims arising under federal law, (b) Defendant Commerce is a federal government agency, (c) Defendants committed the discriminatory acts described in this Complaint within the District of Columbia, and (d) the parties daily travel to the District for work and can readily be found here.

**ADMINISTRATIVE PREREQUISITE**

12.     In May of 2008, Defendant Commerce issued a Final Agency Decision, which exhausted Plaintiff's administrative remedies.

**ALLEGATIONS**

13.     Plaintiff has served Commerce since 1988 without blemish. From October 2003 to March 2007, she was a Management Analyst in the Office of Administrative Services, Office of Building Management. During that time, for more than three years, she was the designated



Martin v. Gutierrez, *et al.*

Parking Coordinator. She administered parking at Commerce headquarters, which included

responsibility for permanent, temporary, and disabled parking and offsite car-pool parking.

14.     For the last seven years, Plaintiff has suffered from an arthritic hip condition. Her

pain is, and has been, severe. Until September 29, 2006, she suffered in silence. However, on

that day, following her doctor's advice, she sought a medical accommodation in the form of a

disability-based parking permit to shorten the distance she had to walk everyday to work.

15.     Commerce promulgated regulations for issuing disability-based parking permits.

Under the regulations, only the Medical Officer has authority to review, evaluate, and issue a

parking permit for employees whose disability impairs walking:

> The Medical Officer will meet with each employee who requests
> parking due to a disability in order to evaluate the request. . . .
> The Medical Officer is responsible for reviewing all requests for
> parking based upon disability and recommending approval or
> denial to the facility Parking Coordinator.

16.     The regulations also require that the Medical Officer receive "at the employee's

manager's request, a signed letter from the employee's physician providing the employee's (a)

diagnosis, (b) prognosis, and (c) duration of the individual's impairment."

17.     No Commerce regulation mandated a different procedure for disabled Parking

Coordinators in need of a parking accommodation. So, consistent with the written regulations

---

**Complaint for Damages and Demand for Jury Trial**



and established procedures she had followed many times before on behalf of other Commerce

employees, Plaintiff took her parking-permit request to a division manager on October 10,

2006, and he instructed her to visit the Medical Officer.

18.    Plaintiff provided the Medical Officer with a letter requesting a parking

accommodation and information about the diagnosis, prognosis, and duration of her disability.

Based on that information and a physical examination, the Medical Officer determined Plaintiff,

in fact, was disabled and authorized the issuance of a disability-based parking permit.

19.    Plaintiff, as Parking Coordinator, followed established procedure and processed

the paperwork for her parking permit only after receiving approval from the Division Manager.

20.    Immediately after Plaintiff began using the permit, Defendant Fanning openly

expressed doubt about Plaintiff's entitlement to it and ordered Defendant Elznic to look into

how she acquired it. Instead of just asking Plaintiff, Defendants began an "investigation" in

which they monitored Plaintiff's parking habits, searched her office in her absence and without

her prior knowledge, and asked her coworkers questions that revealed her private, medical

condition and implied she had committed a deceitful act.

21.    At no time during the investigation did Defendants communicate with Plaintiff

directly or inform her that she was under surveillance.

---

**Complaint for Damages and Demand for Jury Trial**

7



22.     On November 30, 2006, Plaintiff complained to Commerce's Office of Civil Rights that the parking-permit regulations were being applied differently to her than to able-bodied, white men. She believed her race, color, gender, and disability played determinative roles in the way Defendants were conducting the investigation.

23.     Nearly two months after she received her parking permit, on December 19, 2006, Defendant Ramon proposed Plaintiff be suspended without pay for seven days for "unprofessional conduct in improperly using [her] position to obtain a parking permit."

24.     Plaintiff opposed the proposed suspension as discriminatory based on her race, color, gender, and disability. She believed the punishment had nothing to do with her position as Parking Coordinator and identified instances in which white-male Commerce employees had used their parking-permit authority for their own benefit or used it in violation of Commerce's parking policy and, yet, were treated differently than she and not disciplined:

a.     Neither Plaintiff's manager who instructed her to take her medical documentation to the Medical Officer nor the Medical Officer who approved it were investigated or disciplined for their roles in the issuance of her permit.

b.     On several occasions, Defendants Elznic and Aquino had issued themselves and family members parking permits based on their own determinations

Complaint for Damages and Demand for Jury Trial



*Martin v. Gutierrez, et al.*

that the permits were necessary and appropriate. No neutral party served as a check in these repeated decisions in which they or their family members had a beneficial interest. Yet, these two white men were not, and have never been, accused of "unprofessional conduct" and have not been disciplined for any abuse of authority.

     c.     Despite Commerce's regulation that the Medical Officer review all disability-based permits, Defendant Elznic ignored the regulation and issued a disability-based parking permit to a Commerce employee without review by the Medical Officer. Defendant Elznic and the employee he helped were not punished for this infraction.

     d.     Finally, because Defendants Fanning, Elznic, and Ramon had parking-permit authority, they had access to Commerce's permit records. During their investigation, they disclosed the private details of Plaintiff's disability to individuals who had no need for the information in violation of Commerce's workplace-privacy policies. They have not been punished for their indiscretion. (And, later, they would violate Commerce's privacy policies again by disclosing the details of Plaintiff's proceedings before the EEOC.)

25.     On January 30, 2007, after Plaintiff's attorney intervened, Defendant Elznic approved the suspension, but reduced it from seven to three days without pay.

---

**Complaint for Damages and Demand for Jury Trial**



*Martin v. Gutierrez, et al.*

26.    Plaintiff served her suspension from the 10th to the 12th of February 2007. The suspension became part of her permanent record, which means it will be a factor used in future disciplinary proceedings she might be involved in, must be reported on U.S. government job applications, and could affect her ability to obtain a security clearance.

27.    Because of the significant, long-term effects of the suspension, Plaintiff continued to oppose it as discriminatory and, on February 15, 2007, filed an EEO grievance with Commerce's human resources office against Defendants Elznic and Ramon.

28.    Just six days later, Defendant Fanning (the manager who initiated the investigation) authorized the transfer of an able-bodied, white male into Plaintiff's job.

29.    A week before the transfer, Defendants informed Plaintiff that she was being transferred into her replacement's job. They did not ask if she wanted to be transferred, did not tell her why she was being transferred, only gave her a week to prepare for the transfer, and essentially denied her an opportunity to formally oppose the transfer before it occurred.

30.    Defendants replaced Plaintiff with an able-bodied, white male. He is paid more to do her old job, and she is paid less than what he had been paid to do his former job. To facilitate the involuntary transfer, Defendants claimed the transfer was unrelated to her suspension and necessitated by legitimate governmental interests. Still, some of Plaintiff's

---

**Complaint for Damages and Demand for Jury Trial**



Martin v. Gutierrez, *et al.*

coworkers (who should not have had any knowledge of her disciplinary suspension) concluded,

based on the close timing of her suspension and transfer, that she had been banished for

violating parking policies.

31.    Plaintiff's present job is a constructive demotion from her previous job:

a.    her new supervisor had a reputation for being difficult to work for, in

part, because he has been accused of race and gender discrimination;

b.    her new job provides less complexity, variety, responsibility, and

opportunity than her previous job; and

c.    her traditional work hours, which took into account her child-care

responsibilities, were suddenly changed to more burdensome hours.

32.    On March 21, 2007, Plaintiff reported Defendants' conduct to the Office of Civil

Rights and, two days later, filed a discrimination charge, alleging harassment, disparate

treatment, and retaliation. She expands on the grounds for her charge in this Complaint.

33.    Defendants have harassed Plaintiff, among other ways, by:

a.    surveilling her in the office and the parking lot,

b.    questioning coworkers about her disability and parking habits,

c.    searching her office in her absence and without her knowledge,

---

**Complaint for Damages and Demand for Jury Trial**



d.      enlisting coworkers to spy on her and to photograph her car,

e.      disclosing details of her medical condition to coworkers,

f.      conducting an investigation without allowing her to defend herself,

g.      accusing her of deceit and of violating nonexistent policies,

h.      ignoring her complaints of discrimination,

i.      formally reprimanding her,

j.      suspending her from duty,

k.      causing her a loss in pay and retirement contribution,

l.      tarnishing her spotless work record,

m.      treating her differently from other employees who committed similar

acts but were not punished,

n.      disclosing details of her grievance to coworkers,

o.      humiliating her in an office meeting by establishing a new policy that all

knew had been created as a result of her alleged violation,

p.      damaging her ability to transfer voluntarily to other federal jobs, and

q.      damaging her ability to qualify for a security clearance.

---

**Complaint for Damages and Demand for Jury Trial**



Martin v. Gutierrez, *et al.*

34.     Defendants have treated Plaintiff differently from similarly situated Commerce employees, among other ways, in the:

      a.     investigation of, and discipline for, misuse of parking-permit authority;

      b.     process for obtaining and using a disability-based parking permit; and

      c.     process for reassignment and job transfer.

35.     Defendants have retaliated against Plaintiff, among other ways, by:

      a.     suspending her without pay;

      b.     disclosing details of her disability, suspension, and EEO complaint; and

      c.     transferring her—under pretext—to an inferior job.

36.     Defendants' misconduct made Plaintiff feel physically unsafe at work; subjected her to an intimidating investigation; jeopardized her family's financial well-being by causing her to lose income; soiled her good name and work record; stigmatized her by causing people to think she was transferred for disciplinary reasons; derailed her career progression; diminished her job opportunities; publicly exposed intimate details of her personal and professional life; ostracized her among coworkers; humiliated her before coworkers; and triggered her painful headaches, insomnia, and anxiety attacks.

---

**Complaint for Damages and Demand for Jury Trial**



Martin v. Gutierrez, *et al.*

## CLAIMS

### Count 1
### (Disability Discrimination Under the Rehabilitation Act)

37.     Paragraphs 12 to 36 are incorporated into this Count.

38.     Plaintiff suffers from a disability covered by the Rehabilitation Act, 29 U.S.C. §§ 701–796i.

39.     Defendant Commerce is an employer covered by the Rehabilitation Act.

40.     Defendant Commerce had notice of Plaintiff's disability.

41.     Because of her disability and in violation of the Rehabilitation Act, Defendant Commerce, through Defendant Managers, harassed Plaintiff and treated her differently from other Commerce employees as described in paragraphs 33 and 34.

42.     The harassment was severe and pervasive. Plaintiff neither invited nor consented to the harassment. Rather, she was offended by it and complained about it.

43.     Plaintiff suffered the physical, psychic, and monetary injury described in paragraph 36 because of Defendant Commerce's harassment and disparate treatment.

### Count 2
### (Gender Discrimination Under Title VII)

44.     Paragraphs 12 to 36 are incorporated into this Count.

---

45.    Plaintiff is female and falls within a class of persons protected by Title VII.

46.    Defendant is an employer covered by Title VII.

47.    Because of her gender and in violation of Title VII, Defendant Commerce, through Defendants Fanning, Elznic, and Ramon, harassed Plaintiff and treated her differently from other Commerce employees as described in paragraphs 33 and 34.

48.    The harassment was severe and pervasive. Plaintiff neither invited nor consented to the harassment. Rather, she was offended by it and complained about it.

49.    Plaintiff suffered the physical, psychic, and monetary injury described in paragraph 36 because of Defendant Commerce's harassment and disparate treatment.

### Count 3
### (Race and Color Discrimination Under Title VII)

50.    Paragraphs 12 to 36 are incorporated into this Count.

51.    Plaintiff is black and falls within a class of persons protected by Title VII.

52.    Defendant is an employer covered by Title VII.

53.    Because of her race and color and in violation of Title VII, Defendant Commerce, through Defendant Managers, harassed Plaintiff treated Plaintiff differently from other Commerce employees as described in paragraphs 33 and 34.

---

**Complaint for Damages and Demand for Jury Trial**



*Martin v. Gutierrez, et al.*

54.    The harassment was severe and pervasive. Plaintiff neither invited nor consented to the harassment. Rather, she was offended by it and complained about it.

55.    Plaintiff suffered the physical, psychic, and monetary injury described in paragraph 36 because of Defendant Commerce's harassment and disparate treatment.

**Count 4**
**(Race and Color Discrimination Under § 1981 Against Defendant Managers)**

56.    Paragraphs 13 to 36 and 51 to 54 are incorporated into this Count.

57.    Plaintiff is a person within the jurisdiction of the United States and, thus, falls within the class of persons protected by 42 U.S.C. § 1981.

58.    Because of her race and color and in violation of § 1981, Defendants Fanning, Elznic, and Ramon (the "Defendant Managers") harassed Plaintiff and treated her differently from other similarly situated Commerce employees as described in paragraphs 33 and 34.

59.    The harassment was severe and pervasive. Plaintiff neither invited nor consented to the harassment. Rather, she was offended by it and complained about it.

60.    Defendant Managers' actions were knowing, willful, and malicious.

61.    Defendant Managers' actions impaired Plaintiff's right to make and enforce contracts and to enjoy equal benefit of all laws and proceedings enjoyed by white citizens.



*Martin v. Gutierrez, et al.*

62.     Plaintiff suffered the physical, psychic, and monetary injury described in

paragraph 36 because of Defendant Managers' harassment and disparate treatment.

**Count 5**
**(Wrongful Disclosure of an Agency Record Under the Privacy Act)**

63.     Paragraphs 13 to 36 are incorporated into this Count.

64.     Defendant Commerce is an agency covered by the Privacy Act, 5 U.S.C. § 552a,

that maintained records about Plaintiff, which included information about her medical

condition, her punishment, and her participation in the grievance process.

65.     In violation of the Privacy Act, Defendant Commerce, through Defendant

Managers, revealed the contents of those records to other Commerce employees who had no

reason to know such information; failed to maintain those records with such accuracy,

relevance, and completeness as was necessary to assure fairness in a determination relating to

Plaintiff's qualifications, character, rights, opportunities, or benefits; and failed to amend its

records concerning Plaintiff in accordance with her requests.

66.     Plaintiff suffered the physical, psychic, and monetary injury described in

paragraph 36 because of Defendant Commerce's improper disclosure of its records.

Complaint for Damages and Demand for Jury Trial

Martin v. Gutierrez, *et al.*

### Count 6
### (Wrongful Disclosure of Medical Information Under the Rehabilitation Act)

67.    Paragraphs 12 to 36, 39, 64, and 65 are incorporated into this Count.

68.    To obtain a workplace accommodation, Plaintiff provided Defendant Commerce information covered by the Rehabilitation Act about her medical condition.

69.    Defendant Commerce violated the Rehabilitation Act when it revealed, through Defendant Managers, details of Plaintiff's medical condition to its employees who had no reason to know such information.

70.    Plaintiff suffered the physical, psychic, and monetary injury described in paragraph 36 because of Defendant Commerce's disclosure of Plaintiff's medical condition.

### Count 7
### (Public Disclosure of Private Facts Against Defendant Managers
### Under Common Law)

71.    Paragraphs 13 to 36, 64, 65, 68, and 69 are incorporated into this Count.

72.    Defendant Managers had access to information about Plaintiff's medical condition, punishment, and participation in Commerce's grievance process.

73.    That information was not of concern or interest to the public.

74.    As her managers and coworkers, Defendant Managers shared a special relationship with Plaintiff.

---

**Complaint for Damages and Demand for Jury Trial**



*Martin v. Gutierrez, et al.*

75.    Defendant Managers disclosed to coworkers who had no need to know, information about Plaintiff's medical condition, discipline proceedings, and EEO grievance.

76.    Plaintiff suffered the physical, psychic, and monetary injury described in paragraph 36 because of Defendant Managers' disclosure of her records.

**Count 8**
**(Retaliation Under Title VII)**

77.    Paragraphs 12 to 36, and 52 are incorporated into this Count.

78.    Plaintiff engaged in protected activity and opposed Defendant Commerce's discriminatory harassment and treatment of her.

79.    Defendant Commerce was aware of Plaintiff's protected activity and opposition and, in violation of Title VII, took materially adverse actions against her as described in paragraph 35 in retaliation for her protected activity and discrimination opposition.

80.    Plaintiff suffered the physical, psychic, and monetary injury described in paragraph 36 because of Defendant Commerce's retaliation.

**Count 9**
**(Retaliation Under §§ 1981 and 1985 Against Defendant Managers)**

81.    Paragraphs 13 to 36, 78, and 79 are incorporated into this Count.

Complaint for Damages and Demand for Jury Trial



Martin v. Gutierrez, *et al.*

82.     Plaintiff expressed speech protected by the First Amendment to the U.S. Constitution by engaging in protected activity and opposing Defendant Managers' discriminatory harassment and treatment of her.

83.     Defendant Managers were aware of Plaintiff's protected activity and discrimination opposition and, in violation of 42 U.S.C. §§ 1981 and 1985, conspired to take materially adverse actions against her as described in paragraph 35 in retaliation for her activity and opposition and because of her race, color, gender, and disability.

84.     Defendant Managers' actions were knowing, willful, and malicious.

85.     Defendant Managers' actions impaired Plaintiff's right to make and enforce contracts and to enjoy equal benefit of all laws and proceedings enjoyed by white citizens.

86.     Plaintiff suffered the physical, psychic, and monetary injury described in paragraph 36 because of Defendant Managers' retaliation.

**Count 10**
**(Conspiracy to Interfere with Civil Rights Under**
**§ 1985(3) Against Defendant Managers)**

87.     All preceding paragraphs are incorporated into this Count.

88.     Defendant Managers combine to make "two of more persons" within the meaning of 42 U.S.C. § 1985(3).

---

Complaint for Damages and Demand for Jury Trial



Martin v. Gutierrez, *et al.*

89.     Plaintiff is a "person" and within a "class of persons" protected by § 1985(3).

90.     Defendant Managers conspired to deprive Plaintiff of equal protection under privacy and antidiscrimination law and to prevent Plaintiff from freely exercising her civil rights.

91.     To further their conspiracy, Defendant Managers jointly and independently engaged in multiple, overt acts in which they discriminated against Plaintiff based on her race, color, gender, and disability; wrongfully disclosed private records concerning her medical condition, disciplinary action, and EEO complaint; retaliated against her for seeking redress from their discriminatory conduct; and took steps to conceal their unlawful motive.

92.     Defendant Mangers' actions were knowing, willful, and malicious.

93.     Plaintiff suffered the physical, psychic, and monetary injury described in paragraph 36 because of Defendant Managers' conspiratorial actions.

**RELIEF REQUESTED**

94.     For the reasons given in this Complaint, Plaintiff requests the following relief:

A.     Enjoin Defendants from the discriminatory acts alleged in this Complaint;

B.     Assign Plaintiff to a job substantively equal to her previous job;

C.     Award Plaintiff an amount to be determined at trial, but not less than, $2.5 million, which includes compensatory damages, statutory damages, pain-and-

Complaint for Damages and Demand for Jury Trial



Martin v. Gutierrez, *et al.*

suffering damages, punitive damages, litigation costs, attorneys' fees, and prejudgment

interest; and

      D.      Grant any and all other relief deemed appropriate by this Court.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

              Submitted on Plaintiff's behalf by:
              **DOMAN DAVIS LLP**

              Latif Doman (DC 466654)

              1001 Pennsylvania Avenue, N.W.
              Suite 600 South
              Washington, DC 20004
              Phone: (202) 742-6685
              Fax: (202) 318-2390
              Email: latif.doman@domandavis.com

Complaint for Damages and Demand for Jury Trial

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Lisa Martin | Carlos Gutierrez (U.S. Dept. of Comm.), Fred Fanning, Douglas Elznic, and Braulio Ramon |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Prince George's
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    District of Columbia
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Latif Doman of Doman Davis LLP
1001 Pennsylvania Avenue, NW, Suite 600 South
Washington, DC 20004

ATTORNEYS (IF KNOWN)

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff

○ 3 Federal Question
(U.S. Government Not a Party)

⊙ 2 U.S. Government Defendant

○ 4 Diversity
(Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ⊙ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ⊙ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**○ A. Antitrust**

☐ 410 Antitrust

**○ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**○ C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**○ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/* *2255* | ⊙ H. *Employment* *Discrimination* | ○ I. *FOIA/PRIVACY* *ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA* *(non-employment)* | ○ L. *Other Civil Rights* *(non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
⊙ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Job discrimination based on race, sex, and disability in violation of Title VII, the Rehabilitation Act, 42 U.S.C. Sec. 1981, and the Privacy Act

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 2.5M   Check YES only if demanded in complaint
JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE  June 26, 2008    SIGNATURE OF ATTORNEY OF RECORD

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.