## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LISA MARTIN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) **Civil Case No. 08-1131 (RJL)** |
| **GARY LOCKE,** in his official capacity | ) |
| as Secretary of the U.S. Department of Commerce, | ) |
| *et al.,*[1] | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM OPINION

(September **30** , 2009) [#6]

If the factual allegations in this case are true, it is a classic example of how a

heavy-handed bureaucratic overreaction to the somewhat questionable conduct of a

seasoned employee can mushroom into a multi-party discrimination lawsuit in the federal

courts.  Lisa Martin ("plaintiff"), a black woman, brings a ten-count Complaint against

Gary Locke, Secretary of Commerce; Douglas Elznic, Acting Deputy Director of the

Office of Administrative Services; Fred Fanning, Director of the Office of Administrative

Services; and Braulio Ramon, former Associate Director of the Office of Real Estate

Policy (collectively, "defendants").  Plaintiff alleges disability discrimination under the

---

[1] Former Secretary of Commerce Carlos M. Gutierrez was originally named as a
defendant in this case.  Pursuant to Federal Rule of Civil Procedure 25(d), if a public
officer named as a party to an action in his official capacity ceases to hold office, the
court will automatically substitute that officer's successor.  Accordingly, the Court
substitutes Gary Locke, the current Secretary of Commerce, for Carlos Gutierrez.

Rehabilitation Act (Count 1); gender discrimination under Title VII of the Civil Rights

Act (Count 2); racial discrimination under Title VII (Count 3); racial discrimination under

42 U.S.C. § 1981 against defendants Elznic, Fanning, and Ramon (Count 4); wrongful

disclosure of an agency record under the Privacy Act (Count 5); wrongful disclosure of

medical information under the Rehabilitation Act (Count 6); wrongful disclosure of

private facts against defendants Elznic, Fanning, and Ramon (Count 7);[2] retaliation under

Title VII (Count 8); retaliation under 42 U.S.C. §§ 1981 and 1985 against defendants

Elznic, Fanning, and Ramon (Count 9); and conspiracy to interfere with civil rights under

42 U.S.C. § 1985(3) against defendants Elzic, Fanning, and Ramon (Count 10).

Defendants have moved for dismissal or, alternatively, for summary judgment.  Plaintiff

has *conceded* that the claims specifically against defendants Elznic, Fanning, and Ramon

(Counts 4, 9, and 10) are improper; as a result, plaintiff consents to the dismissal of those

claims. (Pl. Opp. [#11] at 16 n.5).  With respect to the others, the Court will GRANT

defendants' Motion for Summary Judgment on the discrimination and retaliation claims

(Counts 1, 2, 3, and 8) and will GRANT defendants' Motion to Dismiss the wrongful

disclosure claims (Counts 5, 6, and 7) for failure to exhaust administrative remedies.

---

[2] Because the Chief of the Civil Division of the United States Attorney's Office has certified that defendants Elznic, Fanning, and Ramon were acting within the scope of their employment at the time of the events alleged in the Complaint, (Declaration of Rudolph Contreras [#6-28]), the Court substitutes the United States as the exclusive defendant for the alleged tort in Count 7 pursuant to the Federal Tort Claims Act. *See* 28 U.S.C. § 2679(d)(1).

## BACKGROUND

Except where noted otherwise, the Court recounts the facts as depicted in the plaintiff's Complaint. Plaintiff has worked for the Department of Commerce since 1988—now more than *twenty* years. (Complaint [#1] at ¶ 13). From October 2003 to March 2007, the Department employed her as a Management Analyst in the Office of Administrative Services. (*Id.*). During that time, she also served as the Parking Coordinator at the Commerce Department headquarters. (*Id.*). As Parking Coordinator, she administered parking assignments for permanent, temporary, and disabled parking, as well as for offsite car-pool parking. (*Id.*).

The claims in this case arise from plaintiff's decision to process a disabled parking permit for herself. Plaintiff claims that she has long suffered from an arthritic hip condition that causes severe pain. (*Id.* at ¶ 14). Following her doctor's advice, plaintiff sought to obtain a disabled parking permit that would shorten the distance of her walk to work. (*Id.*). Consistent with Commerce Department regulations, she presented her request in October 2006 to a manager,[3] who then instructed her to see the medical officer. (*Id.* at ¶ 17). After examining plaintiff's condition, the medical officer *approved* her request for a disabled parking permit. (*Id.* at ¶ 18). Plaintiff then processed the permit. (*Id.* at ¶ 19).

---

[3] Plaintiff acknowledges in her affidavit that this particular manager was not her line supervisor. (Affidavit of Lisa Martin [#11-2] at ¶ 13).

Not long after plaintiff began using the disabled parking permit, defendant Fanning expressed doubt about her entitlement to it and ordered defendant Elznic to investigate. (*Id.* at ¶ 20). Unknown to plaintiff, the defendants monitored her parking habits, searched her office, and questioned her co-workers in a way that both revealed her medical condition and suggested she had done something wrong. (*Id.*). In November 2006, plaintiff lodged a complaint with the Commerce Department's Office of Civil Rights, alleging that the parking-permit regulations were applied differently to her than to able-bodied white men. (*Id.* at ¶ 22). The following month, defendant Ramon recommended that plaintiff be suspended seven days without pay for "'unprofessional conduct in improperly using [her] position to obtain a parking permit.'" (*Id.* at ¶ 23 (alteration in original)). On January 30, 2007, defendant Elznic approved the suspension but reduced it from seven days to three. (*Id.* at ¶ 25). The disciplinary action has since become part of plaintiff's permanent record. (*Id.* at ¶ 26).

Immediately after serving the suspension in February 2007, plaintiff filed an EEO grievance with the Commerce Department's human resources office. (*Id.* at ¶ 27). Six days later, defendant Fanning authorized that plaintiff be transferred to a different job. (*Id.* at ¶ 28). Plaintiff claims that she was replaced with an able-bodied white male who is paid more to do her old job, and that she was transferred to her replacement's job, where she is paid less than what he earned doing the same job. (*Id.* at ¶ 30). Plaintiff does not allege, however, that her pay or grade has been reduced. Nevertheless, plaintiff asserts

that her new job is a constructive demotion (1) because her new supervisor has a reputation for being difficult and has been accused of race and gender discrimination, (2) because her new job offers less complexity, variety, responsibility, and opportunity than her previous job, and (3) because her work hours, which once accounted for her child-care obligations, are now more burdensome. (*Id.* at ¶ 31).

In addition to her alleged improper suspension and transfer, plaintiff claims harassment on account of her race, gender, and disability. (*Id.* at ¶ 33). Among other things, she alleges that defendants have *surveilled* her in the parking lot and in her office, questioned co-workers about her disability and parking habits, *searched* her office without her knowledge, enlisted co-workers to spy on her and to photograph her car, disclosed details of her medical condition to co-workers, accused her of deceit, disclosed the details of her grievance to co-workers, and humiliated her in an office meeting by establishing a new policy that was obviously directed at her alleged violation. (*Id.*).

Ultimately, plaintiff reported defendants' conduct to the Office of Civil Rights and shortly thereafter filed a formal discrimination charge, alleging harassment, disparate treatment, and retaliation. (*Id.* at ¶ 32). In the end, however, the Commerce Department rejected her complaint in a final agency decision issued in April 2008. (*Id.* at ¶ 12; *see also* Exhibit U [#6-24]). This lawsuit followed in June 2008.

## STANDARD OF REVIEW

Because the Court must rely in part on evidence outside of the pleadings to address plaintiff's discrimination and retaliation claims, summary judgment is the appropriate legal standard. Fed. R. Civ. P. 12(d). Similarly, because exhaustion of administrative remedies under Title VII is an affirmative defense and not a jurisdictional prerequisite, the Court must also treat defendants' motion, as it relates to exhaustion, as a motion for summary judgment if facts beyond the pleadings are considered. *Id.*; *see also Douglas v. Donovan*, 559 F.3d 549, 556 n.4 (D.C. Cir. 2009) (stating that Title VII's "exhaustion requirement, though mandatory, is not jurisdictional"). Summary judgment is warranted where the evidence shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). If a motion for summary judgment is properly supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To the extent that the non-moving party offers evidence in response, that evidence "is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Under the Federal Tort Claims Act ("FTCA"), the Privacy Act, and the Rehabilitation Act, however, exhaustion of administrative remedies is a jurisdictional requirement. *GAF Corp. v. United States*, 818 F.2d 901, 905 (D.C. Cir. 1987) (Federal

Tort Claims Act); *Kursar v. Transp. Sec. Admin.*, 581 F. Supp. 2d 7, 18 (D.D.C. 2008)

(Privacy Act); *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (Rehabilitation Act).

Therefore, Rule 12(b)(1) applies. A court may resolve a motion to dismiss for lack of

subject matter jurisdiction either based solely on the complaint or based on evidence

outside of the complaint. *Herbert v. Nat'l Academy Sci.*, 974 F.2d 192, 197 (D.C. Cir.

1992). If the court considers evidence outside of the pleadings, it may weigh that

evidence and resolve any factual disputes, if necessary. *Id.*

## ANALYSIS

**I.     Discrimination and Retaliation Claims (Counts 1, 2, 3, and 8)**

The core of plaintiff's Complaint is that the defendants discriminated against her

on account of her race, gender, and disability. In Counts 1, 2, and 3, she alleges that the

decisions to suspend her and then to transfer her to another job were motivated by an

unlawful discriminatory purpose. She also alleges a continuing course of discriminatory

harassment; however, the Court will not entertain this claim because she failed to exhaust

it.[4] In Count 8, plaintiff further alleges that her suspension, job transfer, and the

---

[4] Plaintiff failed to prosecute her harassment claim when given the chance to do so. In correspondence with plaintiff and her counsel, the agency specifically characterized the claims under consideration as unlawful discrimination and retaliation because "she was suspended from work" and because "she was involuntarily transferred to another job" due to her sex, race, color, and disability and in retaliation for raising concerns about discrimination. (Exhibit F [#6-9] at 1). Plaintiff neither cites any evidence nor even makes a factual allegation that she or her counsel took any steps until now to correct or expand the agency's statement of the issues to include harassment, even though invited to do so by the agency. (*See id.* ("If you believe that the issue(s) in your client's complaint has/have not been correctly identified, you must notify the Chief, Program

disclosure of confidential information about her were in retaliation for her efforts to

report the discrimination.  In light of plaintiff's own account of the facts, as well as other

undisputed evidence in the record, these claims lack merit.  Accordingly, the Court must

and will GRANT summary judgment to defendants.[5]

## A.    Discrimination Claims (Counts 1, 2, and 3)

It is unlawful under Title VII of the Civil Rights Act for an employer to "fail or

refuse to hire or to discharge any individual, or otherwise to discriminate against any

individual with respect to his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 2000e-2(a)(1).  This statute establishes just two elements for an employment

discrimination claim: "(i) the plaintiff suffered an adverse employment action (ii) because

of the employee's race, color, religion, sex, or national origin." *Brady v. Office of*

---

Implementation Division . . . .")).  Like her wrongful disclosure claim in Count 6, which
is explained more fully below, plaintiff's failure to inform the agency of her harassment
claim amounts to an abandonment of the claim.  Plaintiff cannot assert it now.

[5] With the exception of plaintiff's harassment claim, the Court concludes that
plaintiff adequately exhausted her discrimination and retaliation claims in Counts 1, 2, 3,
and 8.  Even though plaintiff did not prosecute her claims with vigor, oftentimes
responding to the administrative judge's orders in an untimely fashion, she did not
abandon them either.  As a result, the administrative judge did not simply dismiss the
claims; instead, he sanctioned plaintiff by cancelling her hearing request and then
proceeded to decide the case on the merits by issuing a final agency decision based on the
evidence before him.  For these reasons, this case is unlike *Smith v. Koplan*, relied upon
heavily by the defendants, in which the administrative judge dismissed the case and
imposed a monetary sanction against the plaintiff because she did not respond at all to any
of the judge's orders.  362 F. Supp. 2d 266, 267 (D.D.C. 2005).

*Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). If the employee has suffered an adverse employment action and if the employer has asserted a legitimate, non-discriminatory reason for the action, then this Court need only determine at the summary judgment stage whether the "employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin." *Id.* at 494. The same approach applies as well to disability discrimination claims under the Rehabilitation Act. *See Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 15 n.24 (D.C. Cir. 2006) (citing *Barth v. Gelb*, 2 F.3d 1180, 1185-86 (D.C. Cir. 1993)).

Plaintiff's three-day suspension undoubtedly amounts to an adverse employment action for which defendants have asserted a legitimate, non-discriminatory explanation. Defendants claim that plaintiff acted unprofessionally when she procured a permanent disabled parking permit for herself while acting in her capacity as Parking Coordinator without consulting anyone in her supervisory chain of command. Plaintiff contends that this explanation is a pretext for unlawful discrimination and offers three facts as evidence. First, plaintiff alleges that she did not violate any agency rule or policy. (Affidavit of Lisa Martin [#11-2] at ¶ 10). Second, she claims that her disabled parking permit has not been revoked because she is entitled to it. (*Id.* at ¶ 15). Third, plaintiff points to instances where able-bodied white men used their authority to issue parking permits for their own benefit or otherwise violated Commerce Department regulations but were not

punished.  Specifically, plaintiff alleges that the manager, who advised her to file the disabled parking request, and the medical officer, who approved it, were not disciplined for their involvement.  (*Id.* at ¶ 17).  She further alleges that two of the managers who were involved in her suspension regularly violated parking rules but were never punished.  (*Id.* at ¶ 18).  For instance, she claims that, after an employee departed for another job, one of the managers began using that employee's parking space, which violated the departmental rule prohibiting the transferability of parking permits.  (*Id.*).  She also alleged that the other manager often used emergency parking permits when there was no emergency.  (*Id.* at ¶ 19).  Finally, she claims that both managers regularly used temporary parking permits for themselves and for family members.  (*Id.* at ¶ 20).

Even if true, these facts do not suffice as a matter of law to establish that defendants' explanation for plaintiff's suspension is a pretext for unlawful discrimination.  That plaintiff did not violate any explicit rule or procedure does not mean she acted in a professionally appropriate manner.  Indeed, defendants acknowledged that even though she violated no explicit rule, her decision to process a disabled parking permit for herself without informing anyone in her chain of command was, nonetheless, unprofessional conduct sufficient to warrant disciplinary action.  (Declaration of Douglas Elznic [#6-16] at 3; Declaration of Braulio Ramon [#6-17] at 2).  Plaintiff obviously disagrees with this judgment, as is her prerogative.  But disagreement as to what constitutes professionally appropriate conduct is not proof of racial, or any other unlawful, discrimination.  Furthermore, the fact of her entitlement to the parking permit is not proof that her

suspension was discriminatory because she was disciplined, not for having the permit, but for processing it herself without the approval of her chain of command.

Plaintiff's strongest argument that her suspension was actually motivated by discriminatory animus is that other agency personnel, who issued parking permits for their own benefit or otherwise violated Commerce Department regulations, were not similarly disciplined. This disparate treatment argument ultimately fails, however, because the agency personnel who plaintiff references are not similarly situated to her. To establish that a comparator is similarly situated for purposes of proving disparate treatment, a plaintiff must show that "all of the relevant aspects of her employment situation were 'nearly identical'" to the comparator's employment situation. *Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1514 (D.C. Cir. 1995). Plaintiff points first to the manager who advised her to submit a disabled parking request and to the medical officer who approved her request. Neither the manager nor the medical officer, of course, are similarly situated to plaintiff. In the first place, they do not hold similar positions as plaintiff, and in any event, they did not engage in the allegedly inappropriate conduct for which she was disciplined. Indeed, plaintiff has cited no evidence that the manager or the medical officer either knew of her failure (or intent not) to inform her supervisors or advised her *not* to inform them. Plaintiff also alleges that two of the managers involved in her suspension regularly violated departmental parking regulations or otherwise issued parking permits for improper purposes. Even if plaintiff's allegations are true, this evidence is proof, at best, that her supervisors treat themselves differently

than they treat their subordinates.  As a subordinate, plaintiff is not similarly situated with

her managers.  Absent some evidence that those managers treat some subordinates

differently than others based on race, gender, or disability, no reasonable jury could

conclude that plaintiff's suspension was the product of unlawful discrimination,

notwithstanding the remarkable zeal of their investigatory process.

Plaintiff has also failed to show, as a matter of law, that her job transfer constitutes

an adverse employment action.  Plaintiff does not allege that her pay or grade has been

reduced.  Rather, she claims that her new job is a "constructive demotion" because:  (1)

her new supervisor has a reputation for being difficult and has been accused of race and

gender discrimination; and (2) her new job offers less complexity, variety, responsibility,

and opportunity than her previous job.[6]  (Complaint [#1] at ¶ 31).  According to plaintiff,

she was responsible in her former job for human resources duties, budgeting tasks,

contracting activities, and credit purchase management and oversight, in addition to

serving as the parking coordinator.  (Affidavit of Lisa Martin [#11-2] at ¶ 22).  She claims

that the "level and diversity of [her] customer base was broad," spanning entire divisions

---

[6] In the Complaint, plaintiff also alleges that her work hours are now more
burdensome, but she fails to offer any evidentiary support for that allegation in her
affidavit.  In any event, even if this allegation were properly supported, she has not
alleged that her hours exceed (or are more burdensome than) the normal work hours
expected for an employee at her pay and grade level.  Therefore, she cannot claim that her
new hours are so adverse as to *materially* affect the terms of her employment.  *See
Mayers v. Laborers' Health & Safety Fund of N. Am.*, 478 F.3d 364, 369 (D.C. Cir. 2007)
(holding that, because the plaintiff did "not allege that the project increased her workload
above and beyond what ordinarily was expected of her," she "failed to allege an adverse
action").

and agencies. (*Id.*). She also "liked and trusted" the people with whom she worked, and she believed that the opportunities for professional growth were "limitless." (*Id.* at ¶¶ 22-23). Plaintiff characterizes her new job differently. She says that it has "very few management-level functions" and that "[m]ost of her responsibilities were given to other employees," leaving her with "busywork." (*Id.* at ¶ 26). Unlike her previous job, she "rarely interact[s] with employees outside [her] group, division, or agency." (*Id.*). She claims that there is "no possibility" for professional growth in her new job, that she has "no concrete daily responsibilities," and that the work is "beneath" her grade. (*Id.* at ¶ 27).

Although plaintiff's comparison of her old and new jobs is short on details, what she does describe is not sufficient as a matter of law to establish that her transfer is an adverse employment action. As our Circuit Court itself has noted:

> [A] plaintiff who is made to undertake or who is denied a lateral transfer—that is, one in which she suffers no diminution in pay or benefits—does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities such that a reasonable trier of fact could conclude that the plaintiff has suffered objectively tangible harm.

*Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999). That plaintiff's new supervisor is reputed to be "difficult" and has been "accused" of race and gender discrimination in the past does not materially affect the terms, conditions, or privileges of employment. Plaintiff is certainly not the first or only federal employee ever to have labored under a difficult boss. Moreover, a person's reputation and the accusations of third parties about

13

that person's supposed past discriminating conduct are not always accurate.  Speculation of this nature cannot suffice as *evidence* of an adverse employment action.

In addition, plaintiff's generalized claims about the importance, quality, and scope of her duties are also inadequate.  While plaintiff claims that she has fewer and less complex responsibilities, the removal of responsibilities does not *alone* constitute an adverse action when the employee has been laterally transferred to a new position at the same pay and grade level.  *Jordan v. Evans*, 355 F. Supp. 2d 72, 80 (D.D.C. 2004) (noting that the "courts in this Circuit have previously declined to find an 'adverse action' where a plaintiff's new duties were 'non-technical and purely clerical in nature' following a transfer, where the plaintiff can show no diminution in pay or benefits").  Plaintiff's subjective belief that her new position is somehow less important or "beneath" her falls short as well given that "[p]urely subjective injuries, such as dissatisfaction with a reassignment, or public humiliation or loss of reputation are not 'adverse action.'" *Id.* (internal quotation marks omitted) (alteration in original).  Moreover, plaintiff's dissatisfaction that her new job offers less interaction with employees outside her division or agency is also inadequate as proof of adverse action because "[m]ere idiosyncracies of personal preference are not sufficient to state an injury." *Brown*, 199 F.3d at 457. Plaintiff's characterization that there is "no possibility" of professional growth in her new job is also insufficient "because she has not alleged any facts to support this contention." *Jordan*, 355 F. Supp. 2d at 80.  In short, plaintiff raises no tangible allegations showing that her transfer is really a demotion.  She has "not alerted the Court to any *specific* duties

14

or responsibilities that clarify" why her new job is materially worse than her old job.  *Id.* (emphasis added).  In *Stewart v. Ashcroft*, the *only* case plaintiff cites on this point, the employee was denied his supervisor's job.  352 F.3d 422, 427 (D.C. Cir. 2003).  The Court held that "[b]ecause of the equality of pay and benefits, we may call it a lateral transfer, but in reality, it is more similar to a denial of a promotion—which is clearly an adverse employment action."  *Id.*  None of plaintiff's vague allegations come remotely close to the showing made in that case.

## B.      Retaliation Claim (Count 8)

Plaintiff's retaliation claim fails for the same reasons as her disparate treatment claims.  Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [an employee] has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).  To state a claim for retaliation, the employee must show "(1) that she engaged in a statutorily protected activity; (2) that the employer took an adverse personnel action; and (3) that a causal connection existed between the two."  *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002).  Like discrimination claims, the burden then shifts to the agency to present some legitimate, non-retaliatory reason for its actions.  *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).  If the agency does so, "the burden-shifting framework disappears, and a court reviewing summary judgment

looks to whether a reasonable jury could infer retaliations from all the evidence." *Id.* (internal quotation marks and alteration omitted).

Plaintiff claims that defendants suspended her and then transferred her to a different job because she reported her allegations of discrimination.[7] (Complaint [#1] at ¶ 35). As to her suspension, plaintiff has not shown, for reasons already set forth, that defendants' legitimate, non-discriminatory explanation is a pretext for anything unlawful. Nor has plaintiff shown as a matter of law that her lateral transfer is a "material" or "significant" adverse action. To prove retaliation, the employee must show that the employer's action is so material or significant that it would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotation marks omitted). As explained already, plaintiff's generalized impressions about the inferiority of her new job, unsupported by any specific factual allegations, do not rise to this level.

## II.   Wrongful Disclosure Claims (Counts 5, 6, and 7)

Nowhere in the Complaint does plaintiff allege that she filed an administrative grievance for wrongful disclosure of confidential information. In November 2006, plaintiff, for the first time, complained to the Commerce Department's Office of Civil Rights that the parking permit regulations were applied differently to her on account of

---

[7] Plaintiff also claims that defendants disclosed confidential information about her in retaliation for her efforts to report unlawful discrimination, (*see* Complaint [#1] at ¶ 35), but for reasons to be explained more fully below, the Court will not entertain any wrongful disclosure allegation because it was not properly presented to the agency.

her race, color, gender, and disability. (Complaint [#1] at ¶ 22). In February 2007, she

filed an EEO grievance with the Commerce Department's human resources office,

alleging that her suspension was discriminatory. (*Id.* at ¶ 27). In her formal charge to the

Office of Civil Rights, she alleged "harassment, disparate treatment, and retaliation." (*Id.*

at ¶ 32). Even though plaintiff did not allege any facts showing that she exhausted her

administrative remedies with respect to any wrongful disclosure claims, plaintiff's

Complaint *nevertheless* raises three such claims against defendants. Count 5 alleges that

defendants violated the Privacy Act, 5 U.S.C. § 552a, by improperly disclosing

information about plaintiff's medical condition, her suspension, and her discrimination

grievances and by failing to maintain the accuracy of her records. (*Id.* at ¶ 65). Count 6

alleges that defendants violated the Rehabilitation Act by wrongfully disclosing

confidential information about her medical condition. (*Id.* at ¶ 69). Count 7 alleges a

common law tort against her supervisors, defendants Elznic, Fanning, and Ramon, for

disclosing to co-workers confidential information about her medical condition, her

disciplinary proceedings, and her EEO grievance. (*Id.* at ¶ 75).

Plaintiff argues that she adequately exhausted her administrative remedies by

providing notice of her wrongful disclosure claims on a number of occasions.

Specifically, plaintiff avers that she notified the agency in January 2007 when her counsel

responded in writing to the seven-day suspension proposed by defendant Ramon and

again in February 2007 when her counsel responded to the three-day suspension approved

by defendant Elznic.[8]   (Pl. Opp. [#11] at 12).   Plaintiff further avers that she informed the

agency of her "privacy concerns" when she met with an EEO officer on March 31, 2007.[9]

(*Id.* at 11).   In addition, plaintiff claims that she alleged in her response to the defendants'

interrogatories that similarly situated co-workers were not subjected to invasion of

privacy for violating departmental regulations.   (*Id.* at 13).   She also points to statements

during the mediation in June 2007 and during her deposition in which she made clear that

private information about her medical condition had been disclosed to co-workers.   (*Id.* at

13-14).[10]

Without more, however, notice of this sort does not suffice to exhaust

administrative remedies for any of the three wrongful disclosure claims.   Administrative

exhaustion for Count 5 under the Privacy Act requires that the claim first be made in

person or by mail to the Commerce Department's Privacy Officer.   15 C.F.R. §§ 4.24,

---

[8] In both letters, plaintiff's counsel stated that "several employees who do not have need to know of [plaintiff's] condition have been given that private information" and that "the law has a remedy called invasion of privacy, which is enforceable under state and federal law . . . for publishing and distributing private medical records."   (Pl. Opp. [#11] at 12 (internal quotation marks omitted) (alteration in original)).

[9] In her formal grievance, however, plaintiff did not specifically mention those privacy concerns.   Instead, she merely stated that she had "complained orally and in writing that her supervisor's and other managers' defamatory accusations, proposed suspension, and related activities were unlawful, discriminatory acts based on her sex, race, color, and disability."   (Exhibit A [#6-4] at 2).

[10] Although plaintiff's Opposition references supporting documentation for the foregoing averments, that documentation has not been docketed.   In any event, the Court will treat the averments made in plaintiff's Opposition as true for the purpose of resolving this case.

4.27; *see also Dickson v. Office of Personnel Mgmt.*, 828 F.2d 32, 40 (D.C. Cir. 1987) (requiring exhaustion of administrative remedies under the Privacy Act). Plaintiff points to no evidence contravening the Privacy Officer's declaration that she had not received any Privacy Act claim from plaintiff. (Declaration of Brenda Dolan [#6-27] at 1-2).

Exhaustion for Count 6 under the Rehabilitation Act also fails because plaintiff did not prosecute this claim when she had an opportunity to do so during the formal EEOC process. In June 2007, the agency notified plaintiff and her counsel of the claims under investigation. (Exhibit F [# 6-9] at 1). Specifically, the agency characterized plaintiff's claims as alleging unlawful discrimination and retaliation because "she was suspended from work" and because "she was involuntarily transferred to another job" due to her sex, race, color, and disability and in retaliation for raising concerns about discrimination. (*Id.*). The agency *directed* plaintiff to notify the Chief of the Program Implementation Division in writing within 15 days if the issues identified by the agency were not correct. (*Id.*). She didn't. And once again, plaintiff points to no evidence that she took the required steps to correct the agency and thus to prosecute her wrongful disclosure claim under the Rehabilitation Act. Plaintiff effectively abandoned this claim, and as a result, neither the agency nor the administrative judge in the EEOC proceedings addressed it.

Administrative exhaustion for Count 7, a tort claim, fails for essentially the same reason. The Federal Tort Claims Act ("FTCA") *requires* that plaintiffs first file with the relevant agency "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim." *GAF Corp.*,

19

818 F.2d at 905. Yet here, plaintiff provides no evidence that she submitted in writing a "sum-certain damages claim" for the tort she now alleges. Plaintiff cites only two letters written by her counsel regarding her suspension (one to defendant Elznic and the other to the human resources director). In both letters, counsel merely noted that several employees had been given confidential information about plaintiff without need to know and that the law provided a remedy for invasion of privacy. (Pl. Opp. [#11] at 12). The letters did not affirmatively state that plaintiff was seeking damages against the agency under the FTCA, and they certainly did not provide a sum certain. Because plaintiff failed to prosecute this claim before the agency in full accordance with the FTCA, she has failed to exhaust.

Thus, for all the foregoing reasons, the Court must GRANT defendants' motion [#6]. It does so, however, with the utmost hope that someone at a senior level in the Department of Commerce will review this entire situation dispassionately and glean from it the lessons necessary to prevent such events from escalating to this extent in the future. An Order consistent with this Memorandum Opinion is attached herewith.

RICHARD J. LEON
United States District Judge